The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now proceeding. God save the United States and this Honorable Court. Be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have two interesting cases. Good lawyers. We look forward to hearing it. In the first case, number 221399. Madam Clerk, do you want to call the case for us? The court calls case number 221399 Judith A. Shears v. Ethicon, Inc. Mr. Foster. Good to have you with us, sir. Good to be here, Your Honor. May it please the court, my name is Jason Foster. Seated to my left is my partner, Ed Amos, and our firm represents the Shears in this appeal. Our first assignment of error deals with a grant of summary judgment in Ethicon's favor on the Shears design defect claim, strict liability claim. I read that as a exclusion of an expert witness issue. You called a summary judgment. That's correct, Your Honor. Was there ever an order entered that characterized it as a record? There was no written order. There was never an order entered called a summary judgment. Well, Mr. Shears, I have the same question as Judge King. I agree with you. The written order does not grant summary judgment. Where in the oral order does the judge grant summary judgment? While you look, I guess I'll say what I read the court is doing is excluding your expert under Daubert and then saying how are you going to prove your strict liability claim and then your client says we'll proceed under the manufacturing defect theory. But I don't ever see the district judge say I am granting summary judgment. Give me one moment, Your Honor. And if that be the case, where are you now? It would be a similar argument, Your Honor, because the whole, if it's not a summary judgment issue, the testimony was excluded based on an erroneous legal standard requiring expert testimony to show the existence of a feasible alternative design that would have eliminated the risk of injury. That has never been the law in West Virginia. Right, but if you have a design defect claim, what's the finality to that claim for our purposes? So the finality to that claim would be to examine the evidence that we presented at trial showing a design defect. And if in fact that evidence creates a genuine issue of material fact, we would ask the court to reverse. But you don't have an expert. We do have an expert, Your Honor. All right, now which one is that? We have two actually, Drs. Kling and Rosenweig, but they were excluded because their testimony said that the alternative designs were safer. Were they excluded or their opinions were excluded? Those opinions on the design defect were excluded, Your Honor. And they had opinions on other claims. That is correct, Your Honor. That is correct, Your Honor. But the calling of the characterizing as a summary judgment rather than as a Daubert evidentiary ruling would change the standard of review for appeal, correct? That is correct, Your Honor. It would make it a de novo review if it's a summary judgment. It would be an abuse of discretion review if it's an evidentiary ruling. Correct, Your Honor. And we believe under either standard... Is that the reason you want to characterize as a summary judgment when it's not one? It is not, Your Honor. It's a mistake on my part if it's not in the record. It was my understanding after reading it. You said the court said it from the bench. I believed I had read that, but apparently I'm mistaken. Okay. But it might not make any difference in the final analysis because an error of law would be, which you claim it is... Correct, Your Honor. That is correct, Your Honor. And again, my apologies for misinterpreting the record. Well, is there then a forfeiture problem? Because I read your opening brief and I don't see an argument that district court erred in an evidentiary ruling. That argument isn't in your opening brief. But our argument is that we presented evidence, sufficient evidence, under the proper legal standard. But that's an argument that you presented, sufficient evidence to survive. I mean, I agree they're very closely related, but I guess the question that the district court erred in excluding a witness under Rule 702 is not the same as the argument that the district court erred in granting summary judgment under Rule 56. That is correct, Your Honor. But it's our position that the outcome is the same either way because under the abuse of discretion standard, it is a clear error of law. And it's confined to what maybe I'll characterize as the elimination theory? Elimination? I'm sorry, I'm not sure if I... Elimination theory. Correct. The instruction says that the theory needs to be, that it needs to eliminate. Correct, Your Honor. Eliminate it, and you're saying that's not in the, that's an error, an erroneous instruction. That's exactly right, Your Honor. That this committee wrote up a proposed instruction, 411, which is not supported by West Virginia law. That's correct, Your Honor. That's the issue you try to raise here. Correct, Your Honor. That that's a legal error. That instruction is simply not legally correct. Correct, Your Honor. And the controlling legal standard was announced by the West Virginia Supreme Court in the seminal case of Black and Becker, Morningstar versus Black and Becker. And to prove a product design defect, you need only show that the product was not reasonably safe. Morningstar is in pretty general terms. I think everybody agrees to that. It seems like to me the crux of the matter on this particular issue with the design defect is that you have pattern jury instructions, may or may not be right, but their pattern jury instructions, as I understand it, are essentially owned by the West Virginia Supreme Court of Appeals and copyrighted by them. And your argument is that a federal court should tell the West Virginia Supreme Court that their instructions are wrong. Not at all, Your Honor. And I would like to clear up any misconceptions. It's supposed to be West Virginia law. You want the federal court to tell the Supreme Court what the West Virginia law is. I do not, Your Honor. I want the federal court to apply West Virginia law, not the West Virginia pattern jury instructions, because the West Virginia pattern jury instructions are not the You see the dilemma that it places the federal court in, that you may be right in terms of the law of West Virginia, but I can't recall any case where there are state pattern jury instructions where we have said, well, those are wrong as a matter of state law, which begs the question of why shouldn't we let the West Virginia Supreme Court tell us what the answer is? Because we already have the answer, Your Honor. The West Virginia pattern jury instructions were never adopted by the state Supreme Court. They were written by a single justice of the Supreme Court. There is no committee that ever approved them. That was done by a single... I thought they had a blue ribbon committee of 30 or so lawyers. I've looked at it. I'm from West Virginia. I know a lot of these folks. It's one of the best lawyers in West Virginia. All of them are butching. That's correct, Your Honor. Both sides of the fence, every direction. It wasn't just a person, the chief justice. I understand that completely, Your Honor. And each chapter was assigned to a subcommittee of attorneys. Is all this in the record of how that committee operated? You're telling us how it was. Maybe you remember it. But does the record of this case reflect how the committee operated? It reflects how it operated for the product liability section of the pattern jury instructions, which was headed by Ethicon's local counsel in this case. You're saying Philip Combs was the reporter. That's correct, which means he was... You're saying that the reporter wrote these instructions with respect to product liability. And you say they were reviewed. Somebody says they were reviewed by two so-called reviewers. Fifteen reporters and fifteen reviewers and at least two of the reviewers reviewed the work of the reporter. Does the record show who those reviewers were? I'm not sure, Your Honor. I have to go back and look at the appendix on that. I do know they are listed in the pattern jury instructions. Can I just ask you a factual question? Are you aware of any case where the Supreme Court of Appeals of West Virginia has said that the pattern jury instructions misstate state law? No, but I am aware... But you're asking us to predict that for the first time apparently in history they would say these pattern jury instructions misstate state law. Your Honor, what I would do is direct you to the preface to the West Virginia pattern jury instructions. No, I completely understand they're not binding, they're not controlling. The Supreme Court of West Virginia would be completely at liberty to do that. Let me posit all of that is true. But you're asking us to predict, which is all we can really do under Erie, is to predict what the Supreme Court of the state would say. You're asking us to predict, as Judge Agee said, that the West Virginia Supreme Court of Appeals would say these pattern jury instructions get state law wrong even though you can't cite an example where the Supreme Court of Appeals of West Virginia has ever done that before. Your Honor, what I can do is cite the controlling West Virginia law that is contrary to the pattern jury instructions. Has anybody moved to certify this issue or some related issue to the Supreme Court of Appeals of West Virginia? On this particular issue, to challenge the jury instructions? In this case, that's what the ones on appeal. We have not, Your Honor, because West Virginia law is clear on the matter. You may have not, but I thought Ethicon had. I'm not aware of that, Your Honor. That's my question. She could explain that, too. I'm saying in this case, was there a motion to certify? None that I'm aware of, Your Honor. Does this court, we have the authority to do it over our own motion, I assume? The court does have the authority, I believe so. Under West Virginia statute, we would certainly accept, the Supreme, our Supreme Court would certainly accept a certified question from this court. However, it's our position that it's unnecessary. And if I may go back, again, West Virginia Constitution says... What if we think that you're wrong? That's why it's unnecessary. Have you ever specified what the issue is that you would have certified? Never in what I would put into an appellate brief. I haven't formulated a precise question, but we're very similar to the issues with regard to this pattern jury instruction and whether or not there is a requirement to show a feasible alternative design that would eliminate the risk of injury. But again, if I may go back, I think we're getting ahead of ourselves. The federal courts in this case must apply West Virginia law. Well, before we apply it, we need to know what it is. And the law is in... Hypothetically, if we were to say we want to certify the appropriate question or questions to the Supreme Court of Appeals of West Virginia, can you tell me what the question or questions are? So, for this particular case on the design defect case, under Morningstar v. Black & Decker and its progeny, does a plaintiff alleging a strict liability design defect need to prove the existence of a feasible alternative design that would have eliminated the risk of injury? That would be the question I would certify. In other words, is the pattern jury instruction right or wrong? I'm sorry, Your Honor? I said, in other words, is the pattern jury instruction right or wrong? Correct, Your Honor. But we don't need to go to that step because Morningstar tells us it's wrong. And there's no case in West Virginia that says it's... But you don't want a certification and you just want us to say Morningstar takes care of it. That's correct, Your Honor. And Morningstar was a response to a certification. It was, Your Honor. From Judge Kopenhagen. Correct. Can I ask you about your negligence claim? Why haven't you just forfeited any argument that any error wasn't harmless by that part of your brief where it says, you know what I'm talking about. It's on page 47 of your brief. It said, we presented the following evidence, colon, followed by nothing. So why doesn't that just mean that you... Why isn't the answer on negligence to say any conceivable error was harmless because the appellants completely failed to respond to the argument that it was harmless? Because it appears in our reply, Your Honor. And that was simply an oversight on our part. It was introduced at trial. It was considered by the jury. The evidence that was submitted does appear in our reply brief with a footnote. Again, that was complete oversight. And again, going back to the negligence claim... But we've said over and over again, you can't make arguments for the first time in your reply brief because it deprives the appellee of the opportunity to respond to them. That's true, Your Honor. But we aren't making additional argument in our reply brief. We're just supplying the evidence that's been in the record all along. It was presented... How does the appellee, not just in your case, but in any case, if the brief says, we introduced this evidence and this shows that we're entitled to the negligence instruction that we wanted, but there's nothing there, how does an appellee respond to that? Because they were there when the original jury instructions were argued. Right, but you're in the court of appeals. You're not in the district court anymore. I understand, Your Honor. And the entire record is part in the joint appendix. So all that evidence is there. All the argument regarding those jury instructions are in there. Our alternative jury instruction that was rejected is in the record. And all the testimony from the expert witnesses for the shears is part of the record. So to the extent that it doesn't appear in the brief, it certainly appears in the joint appendix. And again, going back to the question of negligence, again, those instructions I'm coming down to my last 10 seconds. However, the negligence instruction improperly blended strict liability and negligence together. For strict liability, you look at things like state-of-the-art. You look at things like feasible alternative designs. You look at the risk-utility test. For negligence, the focus is not on the product itself, but instead on the conduct of the manufacturer. But your negligence claim is solely a negligent design claim, correct? It is based on a negligent design claim. That's correct, Your Honor. But the manufacturer acted negligently by using that design. You have not made a claim that there was some defect in the manufacturing process. Other than under the malfunction theory, Your Honor. And that was our second assignment of error. Again, I see that I'm over my time, but I'll be happy to... You can answer questions as long as there are questions posed to you. Go right ahead. So, again, under the malfunction theory, a plaintiff can use circumstantial evidence to prove a defect, either design or manufacturing. And under that standard, the standard is... There's no... My question I was getting to, there's no evidence that there was some defect in the manufacturing process. That's correct, Your Honor. You're back to this was a defective design and the standard there, as I understand those issues, is that there has to be... It has to be something that's proven that happens out of the ordinary. And my recollection is that there was evidence even from your own witnesses that this degradation process for the mesh was always a risk in any type of surgery of that type. That's correct, Your Honor. And that just goes to show that you can't always eliminate the risk of injury, but you can make a product safer. And that goes back to the pattern during Instruction 411. This was one of 37 or 38 cases in West Virginia? I'm not sure the total number that came out of the consolidated cases, Your Honor. So I'm afraid I don't have that information. Is this the only one that's been tried? It's the only one that we're aware of being tried, Your Honor, that our firm served as local counsel for. Will you say some time? Thank you, Ms. Foster. Thank you, Your Honor. Ms. Pepke, good to have you with us. Good morning, Your Honors. May it please the Court, my name is Amy Pepke and I represent the Appellees Johnson & Johnson and Ethicon. Contrary to what we just heard, every issue before this Court today can be resolved by Fourth Circuit or West Virginia Supreme Court precedent. Everyone, this Court should affirm the judgment below for three reasons.  on the strict liability claim, the testimony was properly excluded because Mullen's two... This is your strict liability design defect. Yes, Your Honor. The evidence was proper, the testimony of their experts was properly excluded because Mullen's two correctly applied this Court's precedent in predicting what West Virginia Supreme Court would do. But alternatively, this Court can reach the exact same result by applying Neis, this Court's case, Neis and Church versus Wesson because plaintiff presented no reliable evidence that their alternatives were safer or feasible in 2009. Right. Well, the instruction on the design defect, if I'm recollecting correctly, contained the elimination language. It did, Your Honor. And you won't find that in Neis. You won't find that in Neis. As I recall, in Neis, the language was something to the effect of, and I'm just going to paraphrase here, even though I was on that case, it's very, very hard in that type of a design defect case to prove it unless you can show the safer alternative design. But there was no language in Neis that embraced the elimination concept. Right. So that gets to the crux. I'm going to jump ahead. I was going to go through my red map, but let's just get to the crux of the issue here. First, I do want to take a second to address the waiver issue because I think it's significant. This court correctly observed that this testimony... You're on the negligence claim. I know, Your Honor. There was a waiver issue on the strict liability claim. All right. Now, what waiver are you talking about? It is... Who waived what when? So, on the strict liability... What waiver issue? So, on the strict liability claim, that testimony was excluded in a Dawbert order. That Dawbert order... That's what we were talking about earlier.  exactly. It was a Dawbert ruling to exclude the... A testimony of their experts on feasible alternative design because it didn't eliminate. That order is document 155 and it wasn't part of the appendix. It's not part of plaintiff's appeal. They did not appeal from the exclusion order under Dawbert. So, I think they have a serious waiver issue. But I want to go on and address the substantive issue of elimination. All you have to do in the federal court is file a notice of appeal and then you can raise issues where the court ruled against you. Well, they could have raised it, but they didn't address it at all. It's not in their appendix, document 155. They do characterize it as a summary judgment. You agree that there's a characterization of it as a summary judgment? Yes, that is how they characterized it. It is a mischaracterization. Yes, they just don't even address it. You said we have something in front of us, which we do. Why don't you talk to us about why we shouldn't let the West Virginia Supreme Court of Appeals settle all this? Because this isn't going to be the first case where these issues come up. Your Honor, there's no need to do that to certify the question because Mullins too. Did you ask your client, didn't they raise certification? We did not request certification,  I thought somebody did somewhere. Not on this issue that I'm aware of and I think I've never been involved in the case since it was back in the  Was it raised in a related case? We have raised 37,000 cases. Right, right. But this particular issue. But this would be a rifle shot at West Virginia. Not all of them are West Virginia cases. That is absolutely correct. So the 37 that were consolidated were consolidated. 37 West Virginia cases? Yes. And was certification raised in connection with somewhere in the 37 cases? No, not for this issue because our position has always been that  the   too correctly predicted that the  was too   2016 opinion.  You're resting on the edge. And he says that this elimination stuff is not covered and he's making a more   guess. I think it's more than an educated guess, Your Honor. Just to be  you want us to defer to an unpublished federal district court decision about what the Supreme Court of West Virginia would say? That's not precedent No, Your Honor. Of what West Virginia law is that West Virginia Supreme Court of Appeals would have to say that. Right, Your Honor.  say that this instruction 411 should be deferred to as it's in those instructions? Under Liberty Mutual, yes, Your Honor. That is the duty of this court. The Liberty Mutual case, yeah, that's our case. Yes, it is. Under Liberty Mutual He talks about Judge Neimark talks about policies. Is that what you say this is? Well, yes, under Liberty Mutual When was it adopted by the Supreme Court? Your Honor. He said policies adopted by the court, didn't he? I believe When was this one  by the  Court? Under Liberty Mutual The language I'm referring to is this court should consider among other things cannons of construction regularly applied by the courts of the state and who is used for a  purpose is approved by the state's  court They are on the court's website You purchased them from the West Virginia Supreme Court Are these copyrighted to the  Court of Appeals? I don't Yes it is You can see the for lack of a better word angst that it may cause a federal court in this situation to be  the West Virginia courts that we know their law even though they haven't expressed it or to say that we find your pattern jury instructions wrong as a  of state law Absolutely and it should create angst that's exactly what the terminology of instruction 411 I'm asking the court to follow liberty mutual They would be at best an advisory opinion They would be persuasive authority Yes persuasive authority Yes Even then why would we not want and a this is we have advisory justices adversary justice system and they weren't subjected to that Well let me get you there a different way So not only is 411 persuasive authority and I can go through why they are and I'm not going to weigh into the attacks on Phil Combs because I think your honors know that that's a baseless attack and these  were made up a lot of people a lot of blue chip people on both sides including a partner at his firm was on the committee for the elimination theories in Morning  Note 20 So Morning Star which is an amazing case right we all want to say that Morning Star is a  liability case and it's not Say footnote 20 Yes your honor it's so much more than that so Morning Star addresses strict liability it addresses policy and in note 20 it's discussing the risk utility test that it is adopting and number 4 the manufacturer's policy  eliminate the unsafe character of the product it's right in Morning Star and Justice Ketchum he followed Morning Star he cited it quite a lot in the pattern jury instructions and it's cited in 411 and what is also interesting is when Morning Star adopts this test Morning Star is a forward thinking case right so it says I'm not going to  the test  684 or 891 if you're using the West Virginia Reporter it's a more restrictive test it looks like footnote 20 is explaining seven factors that were proposed by two scholars Dean Keaton and Dean Wade are you saying somewhere in here the court is adopting these yes on page 887 actually it's 886 and 887 where footnote 20 is mentioned it refers to  risk utility test and then it says in the next line we believe that risk utility analysis has a place in tort product liability by setting the general contours of relevant expert testimony concerning the defectiveness of the product so that I believe is where 411 draws the elimination language if we're looking at that maybe I dismissed all this before but I don't remember anybody briefing this point I'm not seeing the court say we now hereby adopt this 7 factor proposal from Dean Keaton and Dean Wade I don't think it says it in that  it certainly says this is the risk utility test I believe you find that's the risk utility factors I want the court to go back to liberty mutual the job here is to predict what the West Virginia Supreme Court would do if you look at  pattern jury instructions you have what you need to predict what the West Virginia courts would do you can get there alternatively without certifying the question because they also fail in proof that the  was safer or feasible in 2009 and that's under this court's niece holding that their proof has to be more than a  In fact they did the district court make that finding that you're just describing? The district court did not though we asked them to repeatedly.  asked Judge Goodwin in our motion to exclude their alternatives because they were not reliable and did not provide evidence that they were safer or could work in submittal sling. At best they said we don't like your material we think you should use this other material. The device isn't just material it's instruments there's a material between the  and it's covered by a  They said our material addresses one issue degradation they didn't say it would fix stress urinary incontinence they didn't prove that at all. My husband works in the construction industry and he wears heavy denim overalls because they protect his body but they  hot and scratchy and irritate his skin. I have a fix for  it's silk it's not going to irritate the skin it breathes in the summer we should put him in silk for his construction work right?  because it doesn't meet the ultimate purpose of what he needs to protect his body and that's what you can do it because the testimony isn't reliable because even their experts say that ultra pro isn't suitable for use in the pelvic space there was  evidence that from any expert that it was available for use as a stress urinary product in 2009 this kind of argument judge king mentioned to the extent the  excluded it on the grounds that the judge was wrong about the law but you're now saying this evidence isn't reliable it doesn't actually show that that's the kind of ruling we would give full support to the  verdict they just didn't have evidence to the extent the court finds that there was you could affirm it I did believe that there were a there was an  on the dobert there are a couple of points in the transcript there is nothing that says summary judgment your honor I'm getting one and they said that in their opening brief there was a summary judgment ruling and you didn't correct it in your brief we did not and I apologize your honor I'm correcting them now you have a jury verdict on the negligence claim yes so I want to get to that so what order in the record disposes of the design defect and the malfunction circumstantial evidence claims so the design defect she excluded the evidence for strict liability design defect she excluded the evidence and it kind of just unfolded from there that we assumed based on judge Keeley's  that meant that their design defect claim was gone the malfunctioning theory am I correct in recalling the district court granted JML for you on that so there's an order of the district court that gets rid of the negligence   why don't you tell us a little bit about the malfunction theory part of it and the waiver issue on the negligence claim do you  if I start with the negligence claim absolutely the negligence design back up it is they pivoted wouldn't let their experts say what they wanted to say that is absolutely correct your honor they pivoted to malfunction theory so the claim was still there and went to the jury and tried on the malfunction theory yes your honor and then it was at the conclusion of the trial it was thrown out on the directed verdict that they call now the JMLL rule 50 JMLL yes the malfunction theory go to the jury though no your honor it was under the judgment as a  of law before it went to the  but it was tried didn't let it   come in because of Judge Goodwin's  in 2016 that you cited you called the second Mullins opinion Mullins 2 was what she relied on the malfunction theory no your honor keep out the evidence no so this is really interesting because it didn't say the elimination theory that was the dauber ruling so this is really interesting so all of that evidence on safer alternative design all of the evidence ended up coming in anyway because plaintiffs argued that safer alternative design evidence even though it was excluded for strict liability was relevant to their negligent design claim so they made that argument and judge Keely agreed so the evidence ended up coming in for their negligence claim which is why it's very ironic that they are now here today that's the claim that went to the  and we won the jury only reached question number one which was purely about negligence and found that Ethicon was not negligent so it didn't was the one that that was a judgment as a matter of law rendered at the conclusion of the evidence no your honor it wasn't entered before the trial started with the trial that claim went to trial on the malfunction theory that claim malfunction theory on the malfunction theory but and then you got an order before the case went to the jury throwing that out absolutely but the malfunction theory was it was disposed of it was disposed of in the rule 50 motion but it was disposed of in the adverse ruling is what they're trying to get up here yes but it wasn't connected to the dauber now what do you think about the proposition that we have authority to to certify something to the Supreme Court of Appeals of West Virginia you absolutely have the authority to do that we have that authority the only thing we have to do is figure out what the question is or what the questions are questions are questions and you all say both of you we found something that you all agree on you don't want us to do it but if you hypothetically assume we're going to do it would you want to try to help explain the questions that might be the appropriate question that asked both of you do you want to provide any assistance in regard to what the  questions would be if we determine to issue a certification order well yes your honor if you determine to you wouldn't have to  them today you might want post argument submissions or something would you want to help out absolutely if we were going to do it absolutely never pass up a chance to have a say so but again you don't have to do that because we've got morning star and the footnote 20 on page 600 and I've looked at that again and all that says is that the state of New Jersey has adopted a proposed risk utility announcement or analysis as to what should be weighed to  if a product is effective and then they have a  20 that says what the New Jersey court specified as factors to consider it's like an observation well this is what New Jersey did it doesn't say that this is what the state of West Virginia Supreme Court is doing at all it just makes an observation that this is what the state of New  Jersey did you correct your honor it doesn't specifically say and these are the exact ones we are going to adopt but in the next in the text in the next paragraph it doesn't say whether they approve it or not it just says New Jersey did this I would disagree with that characterization I believe in the text the court does approve the risk utility test I think it is approval I would argue it is approval I really want to get to our negligence claim I want you to tell me  was that before the case went to the jury or after was it before trial or before the case went to the jury so it was before the case went to the jury it was allowed to be tried at the close of plaintiff's case I move for rule 50 motion and argue the malfunction theory should be dismissed because of course inherent that part didn't go to the jury so tell us quickly about your negligence thank you your honor let me ask one more I can't remember judge Keeley did reserve ruling on some portions of the rule 50 motion I think but she issued it some rulings then I think she came back in the next day and maybe ruled on it it was a kind of evolving trial I think that's right I think she did come back that's my recollection as I stand here today on the negligent design instruction the one the jury did get plaintiff is taking issue with two parts of that negligence claim instruction the first one is the negligent design that's 1A and they take issue with it because of a risk utility test that's incorporated along with the safer alternative design it is correct it is a proper instruction because risk utility balancing including consideration of safer alternative design has long been a part of West Virginia law I want to cite two cases to the court because they weren't apologized in our brief I can submit them in rule 28 the negligence instructions talked about safer alternative design did not have the elimination language that is absolutely correct in West Virginia and Robertson which is 171 West Virginia 607 from 1983 that's where you see a risk utility developed for negligence so risk utility has always been a part of negligence even though plaintiff argues it's not in stone versus united engineering 197 West Virginia 347 1996 look at the jury instruction in that case it is remarkably similar to what was given here in that case West Virginia Supreme Court approved instruction that is the only negligent design case that I can find post mortage star where that was the only claim so there wasn't a strict liability claim in it it's a negligent product design case and they talk about risk utility and negligent design case and in the second part of the instruction well first of all the jury they only got to the negligent design instruction so any errors after that there would be no prejudice but they also took issue with the design defect part B of the negligence instruction because what they say is really interesting in their brief they say it is an error because defectiveness is a component of a strict liability claim not a negligence based product liability claim that could not be more false West Virginia has long required evidence of a defect and a negligence product case it actually goes back the earliest one I could find was 1884 so in Starks versus Baltimore which is 77 West Virginia 93 from 1915 and it's in the  the court says to constitute negligence warranty recovery therefore the defect must affirmatively appear from the proof so defect has always been a part of negligence design defect claim so there are no errors in the jury instructions but the jury never got to the defect question it  at negligence which was properly instructed because it used the risk utility from Robertson it used the instruction that was similar to Stone and it was only they were only asked to consider safer alternative designs and it wasn't an elimination standard she did not put that in there so that was proper I see I am well over time does the court have any other questions we appreciate you absolutely thank you your honor thank you very much Mr. Foster your honor a lot to unpack there I would like to go back and address one thing about these attacks on Philip Combs he wrote a law review article in 2011 in which he stated with respect to the issue of whether a feasible alternative design requirement exists under West  law it hasn't said anything it's been silent on it closest it's ever come is Church V Wesson in that case it was a design defect claim in the court found in that decision that the feasible alternative design wasn't feasible it couldn't be done at that time there was no elimination language in the Church V Wesson case and then all of a sudden Church V Wesson is now the basis for jury instruction 411 so the reason the  instructions she argued Morgan's Morning Star was the basis for 411 I thought if you look at so for each of the pattern jury instructions it has the case law upon which it relies Morning Star and Church V Wesson Church V  is the other case it does not have the word elimination in it Morning Star does not have the word elimination in it and I would like to go back to footnote 20 of Morning Star because as Judge Agee pointed out Morning Star is by Judge Goodwin agreed with that too didn't he? So here's the interesting part Your Honor Judge Copenhaver in the Keffer V. Wyeth case said hey there's no obligation in the strict liability design defect claim to prove the existence of a feasible alternative design it's one way to do it but it's not the only way and in that case that's a really interesting case you bring up Your  that was a hormone replacement therapy case and in that case the plaintiffs did provide evidence that there was a safer alternative drug to the one that had been described and Judge Copenhaver in that case found that that was sufficient so Mullins 1 looked back to Judge Copenhaver's decision in Keffer V. Wyeth and said there's no obligation under West Virginia law to show feasible alternative design it was only because Ethicon asked Judge Goodwin to reconsider Mullins 1 after pattern jury instruction 411 was published what you all call Mullins 1 then you had the instructions being promulgated whatever they were and then you had Mullins 2 and that was based on a request to reconsider Mullins 1 in light of the instructions that's correct your honor and who made that motion to reconsider Ethicon's council Ethicon's council Ethicon asked for it that's correct and Ethicon's local council was the one who drafted that particular jury instruction so how do you go from in 2011 after Church v. Weston had been on the books for over 20 years and saying the West Virginia Supreme Court never said one way or the other to now 2016 saying oh no there is a requirement you're back there and you're saying Pilko's drafted he was the reporter but there were supposed to be reviewers or supposedly were reviewers you all say that that there were at least two reviewers somebody said that and your honor that's and and then you had a supervising circuit judge Judge Alsop and then you had the what was the    Chief Justice Ketchum what was his official capacity he was the Chief Justice for that for that year he was running the whole thing he was in charge of that project that's correct he was in charge of the project that's correct and you had 30 or 30 some lawyers who were the best in West Virginia that's what you had the blue chippers that were on the project and they were doing that to try to assist the patient trial of civil cases in West Virginia that's something like that that's the ivory tower version of it your honor that's right and and you and you were saying it's 411 it's error she says explicitly it's correct so there we are I understand and if I may your honor you raise an interesting point because under West Virginia law under the West Virginia constitution the state supreme court is permitted and it's it's article 8 section 4 the West Virginia supreme court is able to issue rules and regulations regarding the practice of law however it's also governed by statute West Virginia code 51 dash 1 dash 4 all rules promulgated by the supreme court of appeals under the authority of this section shall before taking effect be referred to the chairman of the judicial council the president of the West Virginia bar association and to the judge of every court affected thereby none of that happened in this case so the fact that that Ethicon's local council was the reporter for this is all well and good with regard to the structure that justice Ketchum set up for the publication of the pattern jury instructions but it falls far short of the issuance of the strictures required for the issuance of an administrative order and in fact no administrative order has ever been entered so the question for this court comes back to  and what is West Virginia law on this issue it's not pattern jury instruction 411 because Ethicon's own council said in 2011 there's no case in West Virginia that requires elimination of the risk you sound to me like you now want us to certify your honor if there's no law in West Virginia that requires elimination the controlling law is in syllabus points four and five of Morningstar so again to the extent the court wants to certify a question we will be more than happy to assist and provide our input but again we don't believe it's necessary because as Judge Agee pointed out in fact four syllabus points four and five in Morningstar are vague they do give a broad outline and that's by design in Morningstar the court itself said we can't articulate a standard that's going to cover each and every possibility out there so Morningstar syllabus points four and five are broad and flexible by design and I want to go back again to footnote 20 opposing counsel has rejoined her to that would be well the West Virginia Supreme Court did that when they issued the pattern jury instructions but the Supreme Court did not your honor the Supreme Court has never issued a single pattern jury instruction it's an odd circumstance if they own the copyright and you have to get them from the West Virginia Supreme Court it seems an odd situation as to whether or not they issued them your honor it goes back to our constitution and it goes back to that statute I just read to you you said they didn't do it they jumped through the hoops that's correct your honor you said they didn't do it right it hasn't been done at all so you're saying they're not worth the paper they're written on absolutely your honor unless the parties agree on them which is exactly why the preamble says it's not binding on anybody they're binding if you agree on them and submit them to the court but then the court's not even bound by them they really are just that a starting point and if the parties disagree they argue about them and if the court agrees to adopt it that becomes that goes into the jury instructions but the preamble says if counsel finds an error or believes they're incorrect it's counsel's job to bring that to the court's  discretion that's precisely what we've done in this case there has never been a syllabus point that adopts the elimination theory and the pattern jury instructions are simply one supreme court justice's project we were decided it would be a good idea to certify and we did and then it was subjected to the adversary process in the opinion and the law that is correct your honor that process would certainly certainly get us to the answer but it's our position to be the same answer we have the syllabus points four and five of Morningstar so you're saying it would be a waste of time not a waste of legal resources to do it we don't need to do it so you're still opposed to that I'm not opposed to it your honor you're opposed to it when you're opening the  correct I'm not opposed to it I just don't believe it's the most efficient way to proceed again you're not opposed to it anymore you just don't think it's a good idea just about that your honor correct not the not the best idea it's a good idea but not the best idea if the court has nothing further I see I'm about out of time thank you very much we appreciate it thank you we appreciate the work that you both put into it we appreciate your arguments it's good to have you here you're good lawyers and it's a  and we will take your case under advisement
judges: Robert B. King, G. Steven Agee, Toby J. Heytens